JUSTICE WEBER
dissents as follows:
Issue 1 considers whether the District Court erred in determining that the series of conveyances were fraudulent. In substance, the opinion concludes that Jones failed to present any evidence which would indicate that the subsequent purchase of the property by Ament-Arnold’s stepfather and the later transfer of the property to Ament-Arnold was done with an attempt to defraud Jones and to prevent him from executing on the judgment lien. The opinion concludes that the uncontroverted evidence showed that Clark deeded the property to Ament-Arnold without her or her husband’s knowledge. I do not agree with those conclusions. The opinion further emphasizes that it was Jones’ burden to prove the transactions were fraudulent and there was simply not enough evidence to support a conclusion that “he had born his burden of proof.” While that conclusion may be correct with regard to Jones only, I believe that it is essential to consider the entire transcript which is primarily the testimony on the part of Gary Arnold (Arnold) and Janise Arnold (Ament-Arnold). I emphasize it is the testimony of the two Arnolds which convinced the District Court that the transactions were fraudulent.
*329 After reviewing the transcript and other evidence, I conclude there is a sufficient basis to affirm the majority of the findings of fact of the District Court. Without exactly quoting, the following are the key aspects of various findings of fact:
1. Jones obtained a judgment against Arnold on March 10, 1986.
2. On February 10,1989, Arnold and Ament-Arnold purchased the property under a contract for $11,000.
4. On April 10,1989, the Arnolds quitclaimed the property back to Sipes (original sellers).
5. On April 18, 1989, Sipes deeded the property by warranty deed under a trust indenture to James Clark, stepfather of Ament-Arnold.
6. On May 10, 1989, James Clark quitclaimed the property back to his stepdaughter, Janise Arnold, using the name of“Janise Ament, a married woman in her own right.”
7. On December 12, 1990, Janise Arnold (Ament-Arnold) sold the property to Hayes for $38,500.
8. The property’s present buyers made payments into an escrow to Janise Arnold (Ament-Arnold) — the proceeds of the escrow have a balance of $23,936.11.
Here I wish to emphasize finding of fact 9 which was incorrect as a matter of law and which I believe has essentially caused the misdirection of the opinion. Finding of fact 9, in effect, pointed out that the series of transfers had the effect of removing Arnold from the title — “[t]his prevented execution against the property by Jones”— while the Arnolds retained the ultimate benefit of the transaction. As a matter of law, as pointed out by the opinion, that is of course incorrect. The lien of Jones’judgment attached to any interest which Arnold had in the property at the time Arnold and Ament-Arnold gained an interest of record. However, I do not conclude that negates the balance of the findings and conclusions of the District Court.
Finding of fact 10 stated in substance that the series of conveyances and transfers between husband and wife to stepfather via the original sellers and back to the wife in her maiden name contained the following badges of fraud from which the court inferred a fraudulent intent:
(a) Lack of consideration of the conveyance from stepfather to Ament-Arnold who is identified by her maiden name in the quitclaim deed.
(b) Familial relationship between stepfather and Ament-Arnold and also between Ament-Arnold and Arnold. The effect of the transfers was to transfer the property from husband and wife to wife alone.
*330 (c) Arnold and Ament-Arnold knew at the time of the conveyances that Jones had an outstanding judgment against Arnold.
(d) The quitclaim deed from stepfather to Ament-Arnold was not filed until seventeen months after it was executed and just two months before Ament-Arnold sold the property. The court inferred that the Arnolds may not have wanted Jones to know about the transfers.
(e) It is an unusual method of business for property to change hands three times in one month-Arnolds to Sipes to stepfather to Ament-Arnold.
(f) The series of transactions had the effect of removing Arnold from the title while allowing Arnold and Ament-Arnold to obtain possession of the 'property and reap the benefit of the sale.
14. The Arnolds’ conduct, resulting in the transfer from both of the Arnolds to Ament-Arnold in her maiden name, was designed to frustrate plaintiff’s efforts at executing on his judgment and to unjustly enrich the Arnolds.
In a brief summary, I will review testimony on the part of Arnold and Ament-Arnold at trial. Arnold testified he did tell his wife’s stepfather about the purchase of the property and did tell him they were not able to buy it and that the stepfather decided to buy it on his own account. Arnold then professed that he had nothing to do with the stepfather’s dealing with the property, including the terms of the purchase. Arnold said that he was not interested in the purchase and that Ament-Arnold had nothing to do with the fact the stepfather purchased the property. He concluded by saying “it was bought for himself.” I emphasize this in order to point out the contradiction between this and the actual effect of the transaction. It is clear that the District Court had substantial credible evidence to conclude this was a fabrication on the part of Arnold.
Ament-Arnold testified that they talked to an attorney who prepared the papers which they signed. She also stated she and Arnold had dinner at her parents’ house and discussed with them what had happened. She told her stepfather about it and the stepfather indicated to her that it would have been a good deal. The stepfather was interested in the property. Ament-Arnold stated that the stepfather was doing something for himself when he bought the property. She further contended she had made no arrangements with him. It is significant here to keep in mind that the Arnolds quitclaimed the property back to the Sipes on April 10, 1989; the Sipes deeded the property to the stepfather on April 18, 1989; and the stepfather *331 deeded the property back to Ament-Arnold on May 10, 1989. Again, it is clearly possible for the District Court to conclude that the testimony was a fabrication. The District Court heard and observed the witnesses.
Ament-Arnold testified with regard to the deed from the stepfather to herself. The deed was kept in his safety deposit box for the next year and a half. That way, if the stepfather died, the property would go to Ament-Arnold.
Ament-Arnold then testified as to how the stepfather was using the proceeds of the sale as a loan to her. She contended the monies would come to her as a loan and she would have to pay the stepfather back. She had emphasized that her stepfather was not in good health. She testified that if her stepfather died then she would pay the estate back the amount of money. Consider this testimony along with the following with regard to the method of taxation.
In testifying that she received the property as a loan, Ament-Arnold stated she had to pay the loan back with interest. When questioned by the District Court, she stated that she paid both the state and federal income tax on the money received from the sale of the property, and that the payment of these taxes was considered to be interest by her stepfather. Again the testimony here clearly affords a basis for the District Court to conclude that, in fact, the entire transaction was considered by the stepfather and the Arnolds to be an original sale by Ament-Arnold under which she would have to pay the income taxes due as a result of the gain from the sale. We may also note the inconsistency between her payment of income taxes and her original claim that the stepfather purchased this for his own benefit.
In its conclusions of law, the District Court held that the badges of fraud identified in the findings of fact demonstrated that the Arnolds engaged in a series of conveyances with the actual intent to hinder, delay or defraud Jones. The District Court concluded the evidence was clear and convincing that the Arnolds acted with actual malice.
Applying the DeSaye test, I conclude there is substantial evidence which a reasonable mind could accept as adequate to support the conclusions of the District Court. I would, therefore, affirm the District Court’s determination that the series of conveyances was fraudulent. I would not find it necessary to determine the question as to the extinguishment of the judgment lien by operation of law as set forth in issue 2.1 would affirm the District Court.
CHIEF JUSTICE TURNAGE concurs in the foregoing dissent.